Wright, J.
The only question we propose to consider is, did the words and deeds of Boyd amount to a waiver of notice of dishonor ?
Parsons states the law on the subject thus: “Demand and notice may be waived by an act of the indorser, calculated to put the holder off his guard and prevent him from treating the note as he otherwise would have done.” 1 Parsons on Notes and Bills, 582.
The same author also says, page 592 : “ It wiil be seen that the general principle upon which most of these cases on the subject of waiver depends is, that the indorser has, by act or word, done something calculated to mislead the holder, and induce him to forego taking the usual steps to charge the indorser. The same principle would apply, in our opinion, when the declarations are made on the day of maturity. Thus, where the holder asked the indorser, on the day the note matured, if it would be best to call upon the makers, and the indorser replied that it would be of no use, a regular demand and notice were deemed waived. So a verbal request by the indorser to the holder not to protest the note was held to be a waiver of demand. "With reference to the question whether a particular conversation amounts to a waiver, no general rule can be laid down,’ except that the words used must be such as fairly to lead a reasonable man to suppose that the indorser did not *530 wisli that the regular course in making a demand and giving notice should be pursued, or such as would be calculated to prevent him from so doing. But, on the other hand, the language must not he so vague, uncertain, or loose as to raise a reasonable doubt as to what was intended.”
On this subj'ect Edwards says, page 633 (Licit.): “ And any conduct on the part of the (drawer or) indorser calculated to, and actually inducing the holder to omit serving him with (a) regular notice, will have the same effect. Thus where it was proved that a few days before the bill became due the drawer called at the counting-house of the holder, and being asked the place of his residence, replied that he had no regular residence, that he was living among his friends, and would call and see if the bill was paid by the acceptor, this was held to dispense with notice, and threw upon the drawer the duty of inquiring whether the bill was met at maturity.”
In Lary v. Young, 8 Eng. (13 Ark.) 402, the head note reports: “A few days before it (the note) became due, the attorneys of the indorsee reminded the indorser it would soon be due, and that the maker had left the place. The indorser replied that he owed the note, that it was all right, that he had indorsed to pay it when it became due: his agent, who had notes and accounts in his hands for collection, would do so. Held, sufficient waiver of demand and notice.”
Daniels says : “ Any act, course of conduct, or language of the drawer or indorser calculated to induce the holder not 'to make demand or protest, or give notice, or to put him off his guard, or any agreement by the parties to that effect, will dispense with the necessity of taking these steps.” 2 Daniels Neg. Inst., § 1103, p. 130.
In Gove v. Vining, 7 Met. 212, the syllabus is: “A promissory note was made payable at either bank, in Boston, in four months from December 27, 1841, and was indorsed by the payee. On the 27th of April, 1842, the holder sent a messenger, with a note and written notice to the in *531 dorser, requesting payment, to the house in which the maker and indorser resided. The maker was absent, but the indorser read the notice and told the messenger that the maker would see the holder in a short time, and wished him not to sue the note until the maker should see him. No demand was afterward made on the maker, nor notice given to the indorser, lielcl, that the indorser had waived a legal demand and notice, and was answerable to the holder.” Shaw, J., in delivering the opinion, says: “And the court are of the opinion that when the indorser at, or shortly before the time when the note becomes due, says to the holder that an arrangement for its payment is about being made, and in direct terms, or by reasonable implication, requests the holder to wait and give time, it amounts to an assurance that the note will be paid, that the promisor or indorser will pay it, and is a waiver of demand and notice. It tends to put the holder off his guard, and induces him to forego making a demand at the proper time and place, and it would be contrary to good faith to set up such want of demand and notice, caused, perhaps, by such forbearance, as a ground of defense.”
Counsel for plaintiff in error cite Cayuga Bank v. Dill, 5 Hill, 403, and it must be admitted that the case is much like the one before us, but decided adversely to the views here advanced. Cowen, J., dissented, and Daniels says of the case: “ The court was divided, and the decision has been justly criticized and condemned.” 2 Daniels, § 1107. Parsons says: “ The opinion of Cowen, J., is clearly the better.” 1 Parsons, 592, note g.
The question to be determined is whether, upon a fair construction of Boyd’s conduct, it was calculated to mislead a reasonable person, to put him off his guard, and to induce him to forbear taking the necessary steps to charge the indorser. We think Weil fairly represented Boyd to- the bank, and these representations were affirmed to- be authentic on Mouday, when Boyd, upon being- told them by Griffith, answers that he will come and attend to it. This statement made to the bank, on Saturday, taken in eonnec *532 tiou with the leaving of the new note with the officers of the institution, fairly led them to believe that Boyd would do what he said. Had he kept his word, and indorsed the note on Monday, the necessity of notice and protest was waived.
One who leads another to act upon the faith of statements made, can not escape the consequences which a silence upon such statements has occasioned.

Judgment affirmed.